# NATIONAL COUNCIL OF THE JUNIOR ORDER OF UNITED AMERICAN MECHANICS OF THE UNITED STATES *v.* STATE COUNCIL OF VIRGINIA, JUNIOR ORDER OF UNITED AMERICAN MECHANICS OF THE STATE OF VIRGINIA.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 89.   Argued November 7, 8, 1906.—Decided November 19, 1906.

A benefit association incorporated under a state law and styling itself a National Council granted charters to various voluntary organizations in other States, styled State Councils, for similar purposes under conditions expressed in the charters. A dominant portion of the members of a State Council procured a charter from the state legislature granting the corporation so formed under the same name, powers, in some respects exclusive in that State, to carry on a similar work, but saving any rights of property possessed by the National Council. In a suit, brought by the latter, *held* that:

Whatever relations may have existed between the National Council and the voluntary State Council there was no contract between the former and the incorporated State Council which was impaired, and the act of incorporation was not void within the impairment clause of the Federal Constitution.

A State has the right to exclude a foreign corporation and forbid it from constituting branches within its boundaries, and this power extends to a corporation already within its jurisdiction. A single foreign corporation may be expelled from a State by a special act if the act does not deprive it of property without due process of law.

The property of which a corporation cannot be deprived without due process of law under the Fourteenth Amendment does not include the mere right of a foreign corporation to extend its business and membership in a State which otherwise may exclude it from its boundaries.

104 Virginia, 197, affirmed.

THE facts are stated in the opinion.

*Mr. C. V. Meredith,* with whom *Mr. Smith Bennett* and *Mr. Ellis G. Kinkead* were on the brief, for plaintiff in error:

The legislature of Virginia had no power to take away the right of the National Council to continue to control and to use, through its subordinate body, the Virginia voluntary associa-

tion,. the title or name "State Council of Virginia, Junior Order United American Mechanics." This is true, whether the Virginia corporation is within or without the jurisdiction of Virginia.

A foreign corporation is entitled to come into the courts of Virginia to protect its right to its name, *Bank of Augusta* v. *Earle,* 13 Pet. 519, 590, although not a commercial corporation, but created for intellectual and moral purposes, especially where there is a benevolent fund. *Knights of Honor* v. *Oeters,* 95 Virginia, 610, 615; *State* v. *Dunn,* 134 N. Car. 663, 667; *Gorman* v. *Russell,* 14 California, 532; *Otto* v. *Tailors, P. & P. Union,* 75 California, 308, 313; *Bauer* v. *Samson Lodge,* 102 Indiana, 262; *Dolan* v. *Court Good Samaritan,* 128 Massachusetts, 437; *Lavalle* v. *Societe &c.,* 17 R. I. 680; *Blair* v. *Supreme Council,* 208 Pa. St. 262; *Ludowiski* v. *Benevolent Society,* 29 Mo. App. 337, 341; *State* v. *Georgia Med. Society,* 38 Georgia, 608, 626; *Dartmouth College case,* 4 Wheat. 699; *Lahiff* v. *St. Joseph Society,* 76 Connecticut, 648; *Baird* v. *Wells,* L. R., 44 Ch. Div. 661, 676; *O'Brien* v. *Protective Assn.,* 56 Atl. Rep. 151.

Even the wrongful use of the ritual, seal and paraphernalia of a secret society has been held to justify the intervention of a court of equity. *Maccabees &c.* v. *Maccabees &c.,* 97 N. W. Rep. (Mich.) 779, 783; *State* v. *Julow,* 129 Missouri, 173. See *Y. W. C. A.* v. *Y. W. C. A.,* 194 Illinois, 194, in which it was held that the object, work, sources of support and field of labor of each being the same substantially, and the name of the appellee having been adopted and in use by it many years prior to the incorporation of the appellant, the appellant has no right to adopt as its corporate name one so similar to that of the appellee, or to incorporate in its name words which would indicate to the public that it was the representative of appellee and the conference with which appellee is affiliated. See also *Grand Lodge* v. *Graham,* 31 L. R. A. 138; *McFadden* v. *Murphy,* 149 Massachusetts, 341, approved in *Kane* v. *Shields,* 167 Massachusetts, 392; *Altman* v. *Benz,* 27

N. J. Eq. 331; *Gorman* v. *O'Connor,* 155 Pa.St. 239; *Niblack
Ben. Soc.* v. *O'Connor,.* 3 Desaus. 581; *Y. M. C. A.* v. *St.
Louis Y. M. C. A.,* 91 S. W. Rep. 171; *Boston Rubber Shoe
Co.* v. *Boston Rubber Co.,* 149 Massachusetts, 436, 442; *Spiritual
Temple* v. *Vincent,* 105 N. W. Rep. 1026; *In re First Presbyterian
Church,* 2 Grant's Cases (Pa.), 240; *Edison Co.* v. *Edison Auto-
mobile Co.,* 56 Atl. Rep. 861, 865; *Hendricks* v. *Montague,*
L. R., 17 Ch. Div. 638.

It cannot be claimed that a foreign corporation might ob-
tain protection in the Virginia courts against a wrongful use
of its name by persons merely arbitrarily using the same, yet
that in this case no protection can be had because the legis-
lature of Virginia has chartered the defendant in error under
the name in controversy; that the legislature having so de-
clared the courts can give no protection.

If such contention were sound, the property rights of every
corporation in the United States would be in danger, for every
State in the Union could charter its home corporations by the
names of those chartered in some other State, and thus wrong-
fully appropriate to the home corporations the good will be-
longing to the foreign companies. Such power for evil cannot
legitimately reside in the several state legislatures. It can-
not be regarded as a local question. *Blake* v. *McClung,* 172
U. S. 260. To hold otherwise would be to hold that state leg-
islatures have inherently the right to commit what by com-
mon law and law of nations would be manifest fraud. *Peck
Bros. & Co.* v. *Peck Bros. Co.,* 51 C. C. A. 257; *Ottoman Cahvey
Co.* v. *Dane,* 95 Illinois, 203; *Investor Pub. Co.* v. *Dobinson,*
72 Fed. Rep. 603; *Goodyear Rubber Co.* v. *Goodyear India
Rubber Glove Co.,* 22 Blatchf. 421.

The act of assembly creating defendant in error is void as
beyond the power of the legislature of Virginia although no
specific clause of the constitution of the State may have been
violated.

The theory of our government, state and National, is
opposed to the deposit of unlimited power anywhere. The

executive, the legislative and the judicial branches of these governments are all of limited and defined powers. There exist implied reservations of individual rights, without which the social compact would not exist, and which are respected by all governments entitled to the name. *Farmville* v. *Walker*, 101 Virginia, 330; *Loan Assn.* v. *Topeka*, 20 Wall. 663; see also *State* v. *Addington*, 12 Mo. App. 221; *Dibree* v. *Lanier* (Tenn.), 12 L. R. A. 73; *McCullough* v. *Brown* (So. Car.), 23 L. R. A. 410; Cooley Con. Lim. (7th. ed.), 559; *Lewis* v. *Webb*, 3 Maine, 326; *Willighein* v. *Kennedy*, 2 Georgia, 556; *State* v. *Duffy*, 7 Nevada, 349; *Budd* v. *State*, 3 Humph. 483, 492; *Vanzant* v. *Waddel*, 2 Yerg., 260, 269, cited with approval in *Gulf Ry. Co.* v. *Ellis*, 165 U. S. 156, and in *Cutting* v. *Kansas City Co.*, 183 U. S. 79, 105; *Commonwealth* v. *Perry*, 139 Massachusetts, 198; *Page* v. *Allen*, 58 Pa. St. 338; § 21, art. I, § 20, art. V, Const. Virginia, 1869; *Griffin* v. *Cunningham*, 20 Gratt. 31; *Ratcliffe* v. *Anderson*, 31 Gratt. 105.

The charter granted by the National Council to the State Council was a contract, and the existence of the State Council was necessary for the proper management of the National Council. This contract was impaired by the act creating defendant in error. *Knights of Honor* v. *Oeters*, 95 Virginia, 610, 615; *Kain* v. *Arbeiter &c.*, 102 N. W. Rep. 746, 750; *Kuhl* v. *Mayer*, 42 Mo. App. 474; *Supreme Lodge* v. *Malta*, 30 L. R. A. 838; *Baldwin* v. *Hosmer*, 25 L. R. A. 743; Bacon on Ben. Society, § 37; *Knights* v. *Nitsch*, 95 N. W. Rep. 326; *Union Ben. Soc.* v. *Martin*, 67 S. W. Rep. 49.

The statute creating the defendant in error, making it an independent organization and releasing it from all its duties and obligations to the National Council, was the authorization of a breach of contract. *McGahey* v. *Virginia*, 135 U. S. 693.

The word contract as used in the Constitution will not be given a narrow construction. *Dartmouth College Case*, 4 Wheat. 518, 630, 645; *Bryan* v. *Board of Education*, 151 U. S.

650; *Fuller* v. *Trustees*, 6 Connecticut, 532; *Pulford* v. *Fire Department*, 31 Michigan,. 458.

There are many rights of enjoyment, privileges and personal benefits growing out of agreement or contract, which, though having no actual market value, the courts will enforce because of the mutual obligations contained in such agreement or contract, provided they are not of governmental nature, like marriage and divorce, or similar rights. *Med. Soc.* v. *Weatherly*, 75 Alabama, 248; *Commonwealth* v. *St. Patrick Soc.*, 2 Binney, 441; *Evans* v. *Philadelphia Club*, 50 Pa. St. 107; *Society* v. *Commonwealth*, 52 Pa. St. 125; *People* v. *Musical Union*, 118 N. Y. 101; *Sibley* v. *Club*, 40 N. J. L. 295; *Otto* v. *Tailors' Union*, 75 California, 308; *Savannah Cotton Exchange* v. *State*, 54 Georgia, 668; *Fisher* v. *Keane*, L. R., 11 Ch. Div. 353; *Lambert* v. *Wadhams*, 46 L. T. Report, 20; *Huber* v. *Martin*, 105 N. W. Rep. 1031; *Stone* v. *Mississippi*, 101 U. S. 820.

Constitutional protections should be liberally construed. A close and literal construction deprives them of half their efficiency, and leads to gradual depreciation of the rights, as if it consisted more in sound than in substance. *Boyd* v. *United States*, 116 U. S. 616, 635; *Gulf &c. R. R. Co.* v. *Ellis*, 165 U. S. 150, 154.

The statute is also violative of § 1 of the Fourteenth Amendment, which prohibits any State from depriving any person of life, liberty or property without due process of law. The statute is a flagrant effort to take, so far as the National Council is concerned, the property of the citizen of another State without due process of law. *Wally's Heirs* v. *Kennedy*, 2 Yerg. (Tenn.) 556; *State* v. *Duffy*, 7 Nevada, 349; *Budd* v. *State*, 3 Humph. 483, 492; *Millett* v. *People*, 117 Illinois, 301; *Holden* v. *James*, 11 Massachusetts, 396, 405; *State* v. *Pennoyer*, 18 Atl. Rep. 878; Cooley Const. Lim. 556.

The statute is void, because it also violates the provisions of § 1, Fourteenth Amendment, forbidding any State to deny to any person within its jurisdiction the equal protection of

its laws. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 559; *State* v. *Odd Fellows*, 8 Mo. App. 148, 155.

As to what is discrimination, see *Yick Wo* v. *Hopkins*, 118 U. S. 356, 366; *Atchison R. R. Co.* v. *Matthews*, 174 U. S. 105.

No State need allow the corporations of other States to do business within its jurisdiction unless it chooses, but if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. *Relfe* v. *Rundle*, 103 U. S. 222.

Being thus within the jurisdiction of the State at the time of the adoption of the statute complained of, and not having been driven without its jurisdiction by said statute, as declared by the Supreme Court of Virginia, in construing the same, the National Council was entitled to the equal protection of the laws. *Marchant* v. *Penn. R. R. Co.*, 153 U. S. 380, 389; *Duncan* v. *Missouri*, 152 U. S. 382; *Reagan* v. *Farmers L. & T. Co.*, 154 U. S. 362, 410; *Cotting* v. *Kansas City*, 183 U. S. 105; *Railway* v. *Ellis*, 165 U. S. 150; *Connolly* v. *Union &c. Co.*, 184 U. S. 540, 558.

The 'denial to the National Council, plaintiff in error, of the right to operate in Virginia, is, in effect, an unwarranted abridgment of the privileges of the members, citizens of the United States.

No State can say that an organization of another State, whether incorporated or voluntary, cannot enter the limits of a State for the spread of religious, educational, or governmental principles, unless those doctrines be shocking to decency or manifestly dangerous to the body politic, or that such an organization cannot enter its limits to solicit adherents and form them into local bodies or associations. The right of the people peaceably to assemble for lawful purposes existed long before the adoption of the Constitution of the United States. In fact, it is, and always has been, one of the attributes of citizenship under a free government. *United States* v. *Cruikshank*, 92 U. S. 542; *Watson* v. *Jones,*

13 Wall. 679, 729; *Franklin* v. *Commonwealth*, 10 Barr, 357; *Society* v. *Commonwealth*, 52 Pa. St. 125, 132. Especially is this true where the questions partake of a national nature.

The rights to be protected by these proceedings are not only those of the plaintiff in error, the National Council, but also those of the State Council, a voluntary association, composed of the citizens of Virginia, those of the Lovettsville Council, a domestic corporation of Virginia, and those of each of the other subordinate councils in the State, voluntary associations composed of the citizens of Virginia, as well as those of individual members of subordinate councils who are citizens of Virginia.

*Mr. Samuel A. Anderson* and *Mr. Frank W. Christian*, for defendant in error:

The National Council being a corporation of Pennsylvania, had no right to exist or carry on any operations in Virginia except at the mere pleasure of the latter State, and persons acting under its authority as agents and representatives had no larger power than the corporation they represented. No contract has been pointed out or can be pointed out by the plaintiffs in error, the obligation of which has been impaired by the act of February 17, 1900. Said act does not deprive the National Council and the other defendants, its agents and representatives, of liberty or property without due process of law, nor deny to the said council equal protection of the law. The State has the power to terminate the right of a foreign corporation to do business at any time, so long as it does not deprive that corporation of its actual property. The provision of the Federal Constitution in respect to state legislation impairing the obligation of contracts has always been limited, and applied to only cases of contracts creating some right in respect to property or subjects of pecuniary value. *Butler* v. *Pennsylvania*, 10 How. 402, 416.

No contract is involved which is within the protection of the Federal Constitution. Even if there were a contract that

nature, it was made subject to the inherent reserved power of the State of Virginia at any time to pass an act of the nature of that of February 17, 1900, excluding the National Council from further operation, through its agents, within the State. *Paul* v. *Virginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410; *Pembina Silver Mining Co.* v. *Pennsylvania,* 125 U. S. 181; *Hooper* v. *California,* 155 U. S. 648; *Missouri* v. *Dockery,* 191 U. S. 165; *Travellers' Life Ins. Co.* v. *Prewitt,* 202 U. S. 246; *Lehigh Valley Co.* v. *Hamlin,* 23 Fed. Rep. 225; *Manhattan Life Ins. Co.* v. *Warwick,* 20 Gratt. 614; *Slaughter's Case,* 13 Gratt. 767.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a writ of error to reverse a decree in favor of the defendant in error, the original plaintiff, and hereinafter called the plaintiff. 104 Virginia, 197. The plaintiffs in error will be called the defendants. The plaintiff is a Virginia corporation. The principal defendant is a Pennsylvania corporation. The other defendants are alleged to be officers of a voluntary association, calling itself by the plaintiff's name, and are acting under a charter from the Pennsylvania corporation. The latter was incorporated in 1893, the articles of association reciting that the associates comprise the National Council, the supreme head of the order in the United States (where it previously had existed as a voluntary association). Its objects were to promote the interests of Americans and shield them from foreign competition, to assist them in obtaining employment, to encourage them in business, to establish a sick and funeral fund, and to maintain the public school system, prevent sectarian interference with the same, and uphold the reading of the Holy Bible in the schools. As the result of internal dissensions the Virginia corporation was chartered in 1900, with closely similar objects, omitting those relating to the public schools. It seems to have consisted of the dominant portion of a former

voluntary State Council of the same name, from which a charter issued by the Pennsylvania corporation had been withdrawn.  The act of incorporation declared that the new body "shall be the supreme head of the Junior Order of the United American Mechanics in the State of Virginia," and provides that it "shall have full and exclusive authority to grant Charters to subordinate Councils, Junior Order United American Mechanics, in the State of Virginia, with power to revoke the same for cause."  The plaintiff and the voluntary organization of the defendants both have granted and intend to grant charters to subordinate councils in Virginia, and are obtaining members and fees which each would obtain but for the other, and are holding themselves out as the only true and lawful State Council of the Virginia Junior Order of United American Mechanics.

The plaintiff sued for an injunction, and the defendants, in their answer, asked cross relief.  The plaintiff obtained a decree enjoining the defendant corporation and the other defendants (declared to be shown by their answers to be its agents and representatives), as officers of the Virginia voluntary association, from continuing within the State the use of the plaintiff's name or any other name likely to be taken for it; from using the plaintiff's seal; from carrying out under such name the objects for which the plaintiff and the Virginia voluntary association were organized; from granting charters to subordinate councils in the State as the head of the order in the State; from interfering in any way with the pursuit of its objects by the plaintiff within the State; and from designating their officers within the State by appellations set forth as used by the plaintiff.  On appeal the decree was affirmed, with a modification, merely by way of caution, providing that nothing therein contained should, in anywise, interfere with any personal or property rights that might have accrued before the date of the Virginia charter.  The defendants had set up in their answer and insisted that the charter impaired the obligation of the contract existing between the plaintiff

and the principal defendant, contrary to Article I, section 10, of the Constitution, and also violated section 1 of the Fourteenth Amendment, and they took a writ of error from this court.

The bill and answer state the two sides of the difference which led to the split, at length. But those details have no bearing that needs to be considered here. The only question before us is the constitutionality of the act of the Virginia legislature granting the charter. The elements of that question are the appropriation of the names of the previously existing voluntary society and the exclusive right of granting subcharters in Virginia conferred by the words that we have quoted. Whether the persons who were using that name when they got themselves incorporated were using it rightly or wrongly does not matter if the legislature had the right to grant the name to them in either case. On the other hand, we do not consider the question stated to be disposed of by the limitation put upon the decree by the Supreme Court of Appeals. Unless the saving of personal and property rights existing at the date of the charter be read as a construction of the charter, it does not affect the scope or validity of the act. And if so read, still it cannot be taken to empty the specific prohibitions in the decree of all definite meaning and to leave only an indeterminate injunction to obey the law at the defendant's peril. That injunction remains, and imports what the words of the charter import, that the plaintiff has been granted certain defined exclusive rights which the court will enforce.

The decree, however, goes beyond the rights which we have mentioned as given by the charter. In that respect the discussion here must be limited again. Whether the plaintiff is using paraphernalia, or a ritual, or a seal, which it should not be allowed to use, is not before us here. The charter says nothing about them, and its validity is not affected by any abuse of rights of property or of confidence which the plaintiff or its members may have practiced. This court, we re-

peat, cannot go beyond a decision upon the constitutionality of the charter granted, and we address ourselves to that.

The contract of which the obligation is alleged to have been violated is a contract between the plaintiff and the principal defendant. What that contract is supposed to have been is not stated, but manifestly there was none. It would have had to be a contract not to come into existence, at least with the plaintiff's present functions and name. There have been cases where administration was taken out on a prematurely born child and a suit brought for causing it to be born *per quod* it died but they have failed. *Dietrich* v. *Northampton*, 138 Massachusetts, 14. See *Walker* v. *Great Northern Ry. Co. of Ireland*, 28 L. R. Ir. 69. An antenatal contract presents greater difficulties still. Even if we should substitute an allegation of a contract with the members of the plaintiff, the contention would fail. The contract, if any there was, was not that they would not become incorporated, but must be supposed to be that they would retain their subordination to the National Council, or something of that sort. It is going very far to say that they contracted not to secede, but whether they did so or not, it was a matter outside the purview of the charter. There was nothing in that to hinder their returning to their allegiance. Whether any, and, if any, what contract was made (*National Council, Junior Order United American Mechanics* v. *State Council*, 64 N. J. Eq. 470, 473; *S. C.*, 66 N. J. Eq. 429), and whether, if made, it must not be taken to have been made subject to the powers of the State, with which we are about to deal, are questions which we may pass. See *Pennsylvania College cases*, 13 Wall. 190, 218; *Bedford* v. *Eastern Building & Loan Association,* 181 U. S. 227.

The most serious aspect of the defense is presented by the matter of the plaintiff's name. If the legislation of a State undertook to appropriate to the use of its own creature a trade name of known commercial value, of course the argument would be very strong that an act of incorporation could not interfere with existing property rights. And no doubt

within proper limits the argument would be as good for a foreign corporation as for a foreign person. But that is not what has been done in this case.

The name in question is not the name of the principal defendant, but distinguished from that name as State and National Councils no doubt generally are distinguished by members of similar institutions. It is the name of a voluntary association of which the officers are defendants. But it is not used even by that association in its own right, but only under a charter from, and in the right of, the Pennsylvania corporation. Furthermore, the name is not associated with a product of any kind. Its only value to the defendants, in a property sense, is as tending to invite membership in a club which professes to derive its existence and its powers from the Pennsylvania company. It does not seem likely that any one would join the plaintiff, and certainly no member could be retained, in ignorance of its alienation from the National Council. As the National Council has its branches elsewhere, and as the plaintiff is on its face a state organization, competition outside the State appears improbable. So that the claim of the defendants comes down to a claim of right to compete within the State, and a right, as we have said, of or in behalf of the Pennsylvania corporation, which controls the existence of its subordinate Virginia councils. Thus the question as to the grant of the name passes over into the question as to the exclusive right of the plaintiff to issue charters which was the other legislative grant.

The Supreme Court of Appeals was right, therefore, in treating the constitutional question as depending on the power of the State with regard to foreign corporations. That must decide the case. Now it is true, of course, that an unconstitutional law no more binds foreign corporations than it binds others. *Carroll* v. *Greenwich Ins. Co.*, 199 U. S. 401, 409. And no doubt a law specially directed against a foreign corporation might be unconstitutional, for instance, as depriving it of its property without due process of law. See *Blake* v.

*McClung*, 172 U. S. 239, 260. But when the so-called property consists merely in the value that there might be in extending its business or membership into a State, that property, it hardly needs to be said, depends upon the consent of the State to let the corporation come into the State. The State of Virginia had the undoubted right to exclude the Pennsylvania corporation and to forbid its constituting branches within the Virginia boundaries. As it had that right before the corporation got in, so it had the right to turn it out after it got in. *Security Mutual Life Ins. Co.* v. *Prewitt*, 202 U. S. 246. It follows that the State could impose the more limited restriction. that simply forbade the granting of charters to "subordinate Councils, Junior Order United American Mechanics, in the State of Virginia."

It is argued that the power of the State in this case was less than it otherwise might have been because it did not turn the Pennsylvania corporation out. The Supreme Court of Appeals says that the plaintiff's charter leaves the whole order of things as it existed unaffected except by the exclusive right of the plaintiff to issue, subordinate charters. It is said that the general statutes recognized the defendant and authorized such associations to continue within the State. A subordinate Council of the order had been granted a special charter which is not revoked. The conclusion is drawn that the restrictions upon the defendant which flow from the charter to the plaintiff amount to a denial of the equal protection of the laws of Virginia to a person within its jurisdiction. But the power of the State as to foreign corporations does not depend upon their being outside of its jurisdiction. Those within the jurisdiction, in such sense as they ever can be said to be within it, do not acquire a right not to be turned out except by general laws. A single foreign corporation, especially one unique in character, like the National Council, might be expelled by a special act. It equally could be restricted in the more limited way.

There were many difficult questions presented to the state

court which cannot be reviewed here. As to the constitutionality of the plaintiff's charter we are of opinion that the court was right.

*Decree affirmed.*