DILLINGHAM, AS PRESIDENT, ET AL. *v.* Mc-
LAUGHLIN, AS SUPERINTENDENT OF BANKS
OF THE STATE OF NEW YORK, ET AL.

McLAUGHLIN, AS SUPERINTENDENT OF BANKS
OF THE STATE OF NEW YORK, ET AL. *v.* DIL-
LINGHAM, AS PRESIDENT, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF NEW YORK.

Nos. 690 and 691.   Argued March 17, 1924.—Decided April 7, 1924.

1. Business so nearly akin to banking as to be equally clothed with
   a public interest may be brought under state supervision by con-
   finement to corporations. P. 373.
2. So *held* of a business, conducted by a common-law trust, of solicit-
   ing and receiving loans in small monthly payments under loan
   contracts which entitled the respective lenders, when they had paid
   in a stated percentage, to borrow the face value of their contracts
   in the order of their applications therefor on real estate security,
   or, upon sale of this borrowing right, to receive the amounts paid
   in on their contracts with a problematical " bonus ", or, by paying
   up contracts in full, to receive back their face value with a share
   in a " surplus,"—with provisions as to forfeiture, etc. *Id.*
3. A law of New York forbidding any individual, partnership or unin-
   corporated association to engage in the business of receiving
   deposits or payments of money in installments, for coöperative,
   mutual loan, savings or investment purposes, in sums of less than
   $500 each, *held* not violative of the Equal Protection Clause in
   not applying to the business of receiving larger deposits, in view
   of the greater protection needed by small investors and the ele-
   ments of chance, risk and delay to investors existing in this case.
   P. 374.
4. A party as to whom a statute is not unduly discriminative cannot
   contest its constitutionality upon the ground that it discriminates
   unduly against others. *Id.*
5. The operation of reasonable state laws for the protection of the
   public cannot be headed off by making contracts reaching into the
   future. *Id.*
Reversed.

CROSS appeals from a decree of the District Court in a suit brought by Dillingham et al., trustees, against New York officials, to enjoin them from enforcing a New York statute making the continuance of the plaintiffs' business a misdemeanor.   Laws, N. Y., 1923, c. 895.

*Mr. Oliver D. Burden,* with whom *Mr. Terry A. Lyon* was on the briefs, for appellants and cross-appellees.

*Mr. Edward G. Griffin,* Deputy Attorney General of the State of New York, with whom *Mr. Carl Sherman,* Attorney General, was on the brief, for appellees and cross-appellants.

Mr. JUSTICE HOLMES delivered the opinion of the Court.

The plaintiffs in this case are the president, vice-president and secretary and treasurer, who are also trustees, of the Mutual Benefit League of North America, described in the bill as a common law trust and sometimes denominated plaintiff.   The defendants are the Superintendent of Banks of the State of New York, the Attorney General and the District Attorneys of the same State.   The suit is a proceeding in equity brought to prevent the enforcement of an act of the state legislature approved June 1, 1923, Laws of 1923, c. 895, which makes the continuance of the plaintiffs' business a misdemeanor.   The ground of the bill is that the statute impairs the obligation of contracts, deprives the plaintiffs and those whom they represent of their liberty and property without due process of law, and denies them the equal protection of the law, contrary to § 10, Article I, and the Fourteenth Amendment of the Constitution of the United States.   The case was heard by three judges under § 266 of the Judicial Code, and an interlocutory injunction was issued against prosecuting " this plaintiff " and enforcing the law as to contracts actually entered into on or before June 25, 1923,

the date of the hearing, but except to that extent was denied. Both parties appeal.

The statute forbids any individual, partnership or unincorporated association to engage in the business of receiving deposits or payments of money in installments, for coöperative, mutual loan, savings or investment purposes in sums of less than five hundred dollars each; or to conduct a business similar to the business of a savings bank or a savings and loan association, or to promise to make loans upon real estate security for building &c. purposes as an inducement for the payment of such sums. There are amplifications to stop rat holes, but they need not be stated as it is not denied that the plaintiffs are within the act. The plaintiffs' business consists in soliciting and receiving payments under a complicated document which it is unlikely that the applicant will understand. It is called a three per cent. loan contract and bears the large letters " Face Value $—". The so-called face value is the amount ultimately to be paid by the applicant, and is $100 or more. One per cent. of the amount is to be paid by the applicant monthly. The contracts are placed in a series which is closed at $140,000. The first four and one-half payments are applied by the plaintiffs to the expenses of the business. The subsequent receipts go into a fund appropriated to the series, as do also interest on loans and lapses within the series. When that fund is equal to the face value of a contract, the first applicant in the order in time, if he has paid ten per cent., may borrow the face value of his contract at three per cent. on an approved first mortgage of real estate, repaying at least seven dollars per thousand every month, or he may permit the plaintiffs to sell his right, and receive the amount that he has paid in, with a problematical bonus that need not be described. If he prefers to keep on and pay the full face value the plaintiffs thirty months later will repay it without interest but with a share in

a surplus, if any, that we need not explain.  Failure to pay five installments forfeits the contract, but after six payments the applicant may get a certificate for a considerably less sum than he has paid, increasing however with the increase in the number of the payments, and payable in one hundred months or less at the option of the trustees.  Further particulars are superfluous, but it is obvious that the position and rights of the applicant are very largely dependent upon chance so far as he is concerned.  It is true that his position in the series is certain, but it is extremely improbable that he is told what it will be, as a man would not be likely to come into a series if he knew that a large number of people were entitled ahead of him to whatever advantages the scheme offered. What a man does not know and cannot find out is chance as to him, and is recognized as chance by the law.  Otherwise insurance lost or not lost would not be a valid contract.

That however is not the question here.  The statute in controversy is not aimed at gaming of any sort, but is a regulation of a business so far akin to banking as to be at least equally clothed with a public interest, and subject to regulation.  A State may confine banking to corporations.  *Shallenberger* v. *First State Bank of Holstein,* 219 U. S. 114.  We see no reason why it may not confine the plaintiffs' business in the same way.  It is argued that the business is prohibited altogether, because the statute makes " any person " violating it a criminal.  It is said truly enough that a corporation is a person in the sense of the New York laws.  But a corporation could not violate this law because its commands are addressed only to individuals, partnerships, and unincorporated associations.  So far as this section is concerned it does not prevent the plaintiffs from going on with their business if they will subject themselves to the supervision incident to the corporate form.

The distinction between the businesses of receiving small deposits and those above five hundred dollars is legitimate. The small sums generally come from people without much knowledge of such affairs. Whatever may be one's own opinion about the wisdom of trying to save the ignorant and rash from folly, it is a recognized power that is used in many ways. We have adverted to the element of chance in this very undertaking because it is one not likely to be realized by an applicant. This and the long delay and loss that may ensue upon any particular deposit would be sufficient warrant for the State's effort at least to bring such business under supervision and control, if not to prevent it altogether. It is said that the statute as drawn extends to cases with which it would be irrational to interfere. The Judges below were careful to exclude such a construction, but at all events it is no concern of the plaintiffs. The statute so far as it applies to them must be upheld. *Engel* v. *O'Malley,* 219 U. S. 128.

We do not agree with the Court below as to present contracts. The operation of reasonable laws for the protection of the public cannot be headed off by making contracts reaching into the future. *Manigault* v. *Springs,* 199 U. S. 473, 480. *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467, 482. *Atlantic Coast Line R. R. Co.* v. *Goldsboro,* 232 U. S. 548, 558. *Denver & Rio Grande R. R. Co.* v. *Denver,* 250 U. S. 241, 244. We are of opinion that the injunction should have been denied altogether. If there are objections to the law under the the State constitution that we do not perceive, they will be open to the present plaintiffs when proceedings are instituted in the State Courts.

*Decree reversed.*
*Preliminary injunction denied.*