## WOODS v. COBLEIGH et al.
### Civ. No. 615.

District Court, D. New Hampshire.
Dec. 19, 1947.

Robert J. Glennon, of Boston, Mass., for plaintiff.

Alvin A. Lucier, of Nashua, N. H., for defendants.

CONNOR, District Judge.

The plaintiff, as Housing Expediter, Office of Housing Expediter, brings this action on behalf of the United States under Sections 2, 4, 205(c) and 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, §§ 902, 904, 925(c, e), and by the Price Control Extension Act of 1946, Pub.Law 548, 79th Congress, Chapter 671, 2nd Session, 50 U.S.C.A.Appendix, § 901 et seq., hereinafter referred to as the Act.

The defendants are Gerald F. Cobleigh, of Nashua, within the State and District of New Hampshire, and the Slawsby Real Estate Company, Inc., a corporation duly established under the laws of the State and doing business in said Nashua, which is

within the Manchester Defense-Rental Area. The defendants have been and now are the owners and operators of housing accommodations situated in said Nashua in which there are 32 apartments, of which 29 are the subject of this litigation. It is alleged that from on or about July 26, 1946, to September 7, 1946, the defendants, in violation of Sections 2(a) and 4(a) of the Rent Regulation for Housing (8 F.R. 7323), have demanded and received rents from the 29 different tenants for the use and occupancy of said premises in excess of the maximum rents established therefor. This regulation prescribes the maximum rents for the use and occupancy for housing accommodations in the Manchester Defense-Rental Area, and was in force and effect at the time of the claimed violations.

Jurisdiction is conferred by Section 205 (c) of the Act.

The plaintiff predicates his right to bring this action upon the ground that none of the tenants overcharged has instituted an action under Section 205(e) of the Act within 30 days of the occurrence of such violations. The ownership of the property is not an issue, nor do the defendants deny that they have demanded and received the rents as alleged. During the period from July 1 to July 25, 1946, the defendants caused to be served upon the tenants notice, valid under the laws of the State of New Hampshire, to the effect that on the next rent date their rents would be increased at the rate of $2 a week, their tenancies being upon a weekly basis. Thereafter, the defendants demanded and received from the tenants for the use and occupancy of their respective premises this weekly sum which was in excess of the maximum legal rents established by the above Regulation and in effect June 30, 1946. The defendants take the position that during the period between the expiration of the Act on June 30, 1946, and the effective date of the Price Control Extension Act of 1946 they were free to make an adjustment of the rents and establish new contracts, which they maintain was permissible under state law and no wise in violation of any federal statute or regulation, and having accomplished these changes, such were exempt from the application of the Act.

There can be no question, at least none is here raised, but that the Price Control Extension Act of 1946 effectually extended the Emergency Price Control Act of 1942 to June 30, 1947. "Congress may revive or extend an act by any form of words which makes clear its intention so to do." Kersten v. United States, 10 Cir., 161 F.2d 337, 338. That such was its intent is abundantly clear, and this is demonstrated in the language thereof. "Sec. 17. This Act may be cited as the 'Price Control Extension Act of 1946.'" Section 18 in part provides: "(1) The provisions of this Act shall take effect as of June 30, 1946, and (2) all regulations, orders, price schedules, and requirements under the Emergency Price Control Act of 1942, as amended * * *, and the Stabilization Act of 1942, as amended, which were in effect on June 30, 1946, shall be in effect in the same manner and to the same extent as if this Act had been enacted on June 30, 1946, * * *: Provided further, That no act or transaction, or omission or failure to act, occurring subsequent to June 30, 1946, and prior to the date of enactment of this Act shall be deemed to be a violation of the Emergency Price Control Act of 1942, as amended, or the Stabilization Act of 1942, as amended, or of any regulation, order, price schedule, or requirement under either of such Acts: * * *." 50 U.S.C.A.Appendix, § 901a note. It is equally plain that Congress intended to make such Acts and the regulations promulgated thereunder retroactive to June 30, 1946, with the proviso that there should be no civil or criminal liability for any act, transaction, omission, or failure to act occurring subsequent to June 30, 1946, and prior to July 25, 1946. Porter v. Shibe, 10 Cir., 158 F.2d 68.

Although whatever transpired during the so-called "holiday" was excluded from the operation of the Act by the savings clause thereof, the reenactment revived and made effective all directives in force as of June 30, 1946. It follows that upon such revival, the rental contracts being in conflict with the pertinent regulations must

be subordinated thereto, for they cannot supersede or stand in the way of the Act, which is an exercise of the Government's war power and designed to promote the general welfare. Taylor v. Brown, Em. App., 137 F.2d 654, certiorari denied, 320 U.S. 787, 64 S.Ct. 194, 88 L.Ed. 473.

██ The defendants further suggest that it was the duty of the Administrator to issue an order nullifying the acts which occurred during the decontrol period, and offer as an analogy the order of the Administrator with reference to security deposits and cited as 11 F.R. 12056. Paragraph 3 of Section 2 prohibits the demand, receipt, or retention of any security deposit, except within certain limitations. Paragraph 8 of said section, upon which defendants lay considerable stress, contains the following language: "Notwithstanding the preceding provisions of this paragraph (d), the demand, receipt, or retention of a security deposit contrary to such provisions between June 30, 1946, and July 25, 1946, shall not be a violation of this regulation: Provided, however, That the landlord shall refund such security deposit to the tenant within 30 days of July 25, 1946." The foregoing paragraph 8 was added by Am. 97, 11 F.R. 8164, effective July 26, 1946. The defendants contend that by the language of this subparagraph the Administrator recognized that there was no violation during the so-called holiday period and so declared it, and thereupon issued an order to the effect that if such security deposit had been received, the landlord was obliged to return it within 30 days or be in violation of the Act, and urge that a like order was required by the Administrator to a landlord who had increased the rent beyond the maximum rent in effect on June 30, 1946. A sufficient answer to the defendants' proposal is that insofar as it concerns the situation in the instant case no order was needed. The reenactment revitalized the pertinent regulation which was in effect on June 30, 1946, and an additional order would add nothing to its force and extent. While the cited instance is irrelevant, it may be observed in passing that it would appear to have been fully authorized by the terms of Sections 2(g) and 201(d) of the Act, and under the rule

of Dillingham v. McLaughlin, 264 U.S. 370, 374, 44 S.Ct. 362, 364, 68 L.Ed. 742, that "The operation of reasonable laws for the protection of the public cannot be headed off by making contracts reaching into the future."

██ Neither is there any merit in the further contention of the defendants that they were denied the right of appeal to test the reasonableness of the rents within the statutory time because of the failure of the Administrator or the Area Director to issue an order disapproving of the increases. By the terms of the Act no such order is either required or permitted, but remedial steps may be taken with a view toward relieving against a claimed harsh, invalid, or unjust order. Under the provisions of Section 201(d), and Section 203(a) as amended, the defendants could have filed a protest specifically setting forth their objections to the regulation to which they were subject. Section 204 of the Act, as amended, provides that any person aggrieved by denial or partial denial of his protest may within 30 days file a complaint with the Emergency Court of Appeals, specifying his objections and praying that the regulation protested against be enjoined or set aside in whole or in part. It is further provided that a judgment thereof may be similarly reviewed by writ of certiorari to the Supreme Court of the United States. "Thus, the juridical process contemplates exhaustion of the administrative remedy as prerequisite to judicial consideration." McRae v. Creedon, 10 Cir., 162 F.2d 989, 992. Such was not the course adopted here.

██ The plaintiff prays for (1) a permanent injunction and for judgment against the defendants in an amount representing three times the overcharges; (2) that the defendants be ordered to make restitution to each of the tenants from whom the excess beyond the maximum rent has been demanded and received; and (3) that if restitution be ordered by the court, there be judgment in favor of the administrator for twice the amount of the overcharges. The damages here sought are in the nature of a penalty which under the terms of Section 205(e) of the Act must be as-

sessed at least to the extent of the overcharges upon a finding, as is here required, that there has been a violation. "The undeviating command of the statute fixes the amount of the damages to be recovered and deprives the court of any discretionary leeway in connection with it." Porter v. Rumsey, 10 Cir., 159 F.2d 180, 181. While the minimum is fixed, the maximum is by the statute made contingent in the first instance upon whether the person charged establishes by a preponderance of the evidence that the violation was neither willful nor the result of failure to take practicable precautions against its occurrence. If this burden is met, then the damages are limited to the overcharge, but if not met in whole or in part, the court in its discretion may determine what amount, not exceeding three times the amount of the overcharges, is to be levied. "Willfulness" within the enforcement provisions of subsection (e) of the Act means intentional, knowing, voluntary, deliberate, or obstinate, as distinguished from malevolent, or specifically designed to be violative of the law. "Practicable precaution" means that the act is capable of being done or that performance is possible and that by the exercise of ordinary, reasonable care and caution, it is possible to avoid the commission of a wrongdoing. Bowles v. Weitz, D.C., 64 F.Supp. 829.

On the state of the record, the conclusion is inescapable that the defendants' violative conduct was willful and the result of their failure to take practicable precautions. They took the position that they were not within the statute, and did nothing other than to offer that their counsel confer with the legal staff of the district office of the OPA and discuss the interpretation and application of the new Act. However, in certain aspects, the violations were not of the usual character, and in considering the question of the allowance of multiple damages and of the extent of their amount, these circumstances should in reason be noted. Bowles v. Goebel, 8 Cir., 151 F.2d 671. This is not the situation wherein off-color practices were resorted to, such as the giving of false receipts or other forms of collusion with, or coercion of, the tenants, and while the absence thereof does not exonerate, it does in a measure mitigate. Barring proof of the lack of willfulness and the taking of practicable precautions, the question of the imposition of an appropriate penalty is directed to the sound discretion of the court which "must be exercised in light of the large objectives of the Act." Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754. "Discretion in a legal sense necessarily is the responsible exercise of official conscience on all the facts of a particular situation in the light of the purpose for which the power exists." Bowles v. Goebel, supra [151 F.2d 674]. Practical application of this power requires that no rigid prescription or rule be laid down in determining within what limits the court's judgment is to be confined, but each case demands its own particular disposition upon all of the considerations involved.

The violations are clear, and although the course elected by the defendants is indefensible, it was neither surreptitious nor deceptive, and this circumstance seems sufficiently extenuating to warrant the exaction of something less than the full penalty under the Act. It is my view that the defendants will be suitably penalized and the purpose of the statute accomplished in an order requiring that restitution be made to the tenants and a further order awarding damages to the plaintiff in an amount equal to the overcharges.

### Conclusions of Law.

1. The defendants did demand and receive rents in excess of the maximum rents during the period July 26, 1946, to September 7, 1946, in violation of the Act as alleged.

2. The defendants be ordered to make restitution to each of the tenants of the excess received above the maximum rent during the aforesaid period.

3. The plaintiff is entitled to recovery and that judgment be entered in favor of the plaintiff on behalf of the United States against the defendants for the amount of the overcharges.

Counsel will prepare and submit a decree in conformity herewith.