LUCKY CALENDAR CO., INC., PLAINTIFF-RESPONDENT, v.
MITCHELL H. COHEN, COUNTY PROSECUTOR, CAMDEN
COUNTY, DEFENDANT-APPELLANT.

Argued December 19, 1955—Decided January 9, 1956.

*Mr. Ralph L. Fusco,* Deputy Attorney-General, argued the cause for the appellant (*Mr. Grover C. Richman, Jr.,* Attorney-General; *Mr. David M. Satz, Jr.,* of counsel on the brief).

*Mr. Joseph H. Stamler* argued the cause for the respondent (*Messrs. Gilhooly, Yauch & Fagan,* attorneys; *Mr. Joseph Stamler* and *Mr. James E. Fagan,* of counsel on the brief).

The opinion of the court was delivered by
VANDERBILT, C. J.

I.

In a recent decision, 19 *N. J.* 399 (1955), this court decided adversely to the plaintiff its suit for a declaratory judgment not merely with respect to its "coupon calendar" mentioned in the complaint and stipulation of facts, but also with respect to its "jingle calendar" which was produced at the oral argument by the defendant.

The plaintiff then moved for a rehearing on various grounds, one of which asserted that it was denied due process with respect to the jingle calendar. To remove any possible doubt on that score we granted a rehearing limited to that ground alone, 20 *N. J.* 160, December 5, 1955.

The stipulation of facts in the case set forth that the plaintiff and the American Stores Company (which operates 278 Acme Stores in New Jersey) had contracted to introduce and operate the coupon calendar program in this State, but because of the doubt cast on the legality of the program by the defendant and his threat of criminal prosecution if it was pursued in his county, it did not desire to subject itself and its customer, The American Stores Company, to the hazards incident to a continuance of the program. This

quite naturally led the trial court to believe that there was a *bona fide* controversy involving a substantial part, if not the whole, of the plaintiff's business here, and that the inception of the program was imminent. The trial judge (36 *N. J. Super.* 300 (*Law Div.* 1955)), in disposing of the procedural preliminaries, correctly noted that:

> "The first question presented is whether an actual controversy exists that is ripe for judicial interpretation. The Uniform Declaratory Judgments Act cannot be used to decide or declare rights or status of parties upon a state of facts which are future, contingent and uncertain. The act is not to be used to obtain advisory opinions. *Tanner v. Boynton Lumber Co.*, 98 *N. J. Eq.* 85 (*Ch.* 1925)."

This court, too, in its opinion (19 *N. J.* 399, 408–409) naturally relied upon the allegations of the stipulation of facts which led us to believe that substantial business operations of the plaintiff in this State were at stake and that its customer, The American Stores Company, was in agreement with it.

We now learn from the papers now submitted to us that the facts are totally different from those presented to us on the original argument. The plaintiff did not reveal until the filing of its papers on the present reargument that it had several different types of promotion schemes available for use under the name "Lucky Calendar." It did not inform the court in its brief prior to the argument, or even in the oral argument on September 27, 1955, that it had contracted with The American Stores Company for an entirely new and different promotion for New Jersey, *i. e.*, the Lucky Calendar Jingle Contest.

Not only was the Coupon Calendar not in use at the time the plaintiff was asking this court for a declaratory judgment, but we are now informed, for the first time, that The American Stores Company had specifically refused to use the Lucky Calendar Coupon promotion in New Jersey because in the opinion of its general counsel the program was an illegal lottery under the laws of New Jersey and that it had refused to be a party to a test case to be instituted here because it "was not the policy of the company to become

involved in the interpretation of criminal statutes." In fact The American Stores Company advised the plaintiff that

"If ultimately they were successful in establishing the legality of a promotion of this nature (the coupon calendar), if in the future we again used the Lucky Calendar promotion, we would consider its operation in New Jersey."

Thus it is now admitted that there was in fact no uncertainty on the part of The American Stores Company as to the illegality of the coupon calendar, contrary to what was alleged in the complaint and the stipulation of facts.

Even after the decision of the trial court sustaining the alleged legality of the coupon calendar, The American Stores Company still refused to use the coupon drawing type of promotion in New Jersey, because it did not consider the decision of that court binding throughout the State, adhering, it is obvious, to its belief that the coupon program was illegal and would be so construed by our appellate courts.

The jingle calendar promotion program was instituted here, according to the plaintiff, "about the second or third week of September, 1955, to run for a period of 13 weeks up to and including December 17, 1955."

This was the state of affairs that existed September 27, 1955, the day of argument of the appeal from the judgment of the trial court in plaintiff's favor. At the oral argument the Deputy Attorney-General presented to the court a copy of the jingle calendar then in use. The plaintiff's counsel stated on the motion for reargument that he did not expect that the jingle calendar would be mentioned or referred to until he heard and saw it presented to this court by his opponent. This court would never have known of this vital change in the facts submitted to it in the stipulation of facts if the jingle calendar had not been called to its attention by the defendant. An action for declaratory judgment proceeds on equitable principles. The relief which the plaintiff asks for presupposes a full and truthful disclosure. In seeking discretionary relief to enable

it to avoid criminal prosecution, the plaintiff was bound to make known the change in the program to the court, because it bore materially on its right to a decision, Borchard, *Declaratory Judgments* (*2d ed.* 1941), *page* 35. A plaintiff, in a proceeding for declaratory judgment, may not pick and choose the particular facts upon which it will submit the issue to the court. Nothing short of a full *bona fide* disclosure in good faith of all the pertinent facts will suffice in an application for declaratory judgment. Nor would the plaintiff be heard to complain when the suppression of a controlling fact is brought to light by his adversary. We disposed of the jingle calendar in our original decision believing, from the face of the calendar and from the instructions and information given to the participants, that it was in fact no less illegal than its predecessor.

The jingle calendar promotion was in full swing at the time of our first opinion, and though uninformed of all the pertinent facts as stated above, we noted in it that it was unfortunate that the plaintiff and its customer, American Stores Company, had not waited for our decision before embarking on the new program (19 *N. J.* 399, 409). In spite of our decision and in complete disregard of it, the jingle calendar promotion was continued unabated by the American Stores Company. The American Stores acknowledged that it had notice of our decision, but it takes the unwarranted view that our decision "could not have specific reference to the present promotion (the jingle calendar)." It was not until the *per curiam* expression by this court on December 5, 1955 that it finally discontinued prospective operation of the jingle calendar promotion.

Under the true state of the affairs that existed between this plaintiff and American Stores Company, it would have been improper for the courts to exercise their discretion in favor of entertaining this action, *Borchard, Declaratory Judgments* (*2d ed.* 1941), *page* 56. If all of the facts now within our knowledge had been known to this court at the time of the argument we have no doubt that the action for declaratory judgment would have been dismissed without

passing on the merits of either the coupon or the jingle program, leaving the plaintiff to assert its position in defending such criminal action as might be brought against it. By the concealment of pertinent facts this court has been induced to pass judgment on matters on which it never would have expressed an opinion, first, because events represented to be presently in controversy were not in fact in controversy insofar as the principal party in interest, American Stores Company, was concerned, and secondly, because the jingle calendar was actually being used instead of the coupon calendar mentioned in the stipulation of facts.

## II.

It remains to determine whether the jingle calendar is any better than the view already taken of it by the court, on the basis of information now furnished the court. In considering the factual aspects of the case, we have accepted the statements made on behalf of the plaintiff in the light most favorable to it.

The jingle calendars are delivered free by mailing one to every family within the range of each Acme store. The cover announces that the recipients "have a *chance* to win at your Acme Super Market, 12 Cadillacs, 92 Milk Stoles, 1800 additional prizes." (Emphasis supplied) On each page the recipients are directed to "see the last page for complete instructions." The "contest" blanks are on the bottom of each page on which a monthly calendar appears. They are appropriately dated for the week in which they are valid and conveniently scored for easy removal. There are 13 entry blanks identical in every respect except for their dates—each a week apart—and the first three lines of the jingle. The contestant is required to fill in his name, address and telephone number. He is then directed to "complete the 4th line of the verse on the other side of this coupon, and deposit it in the contest box just inside the door of your nearby Acme store on or before" and then the appropriate date appears. Each of the jingles is designed to extol the virtues

of the products of American Stores Company or their service. In addition to these entry blanks, there are 30 money-saving coupons for specific merchandise. On the inside cover of the last page the rules of the "contest" appear generally in the form set forth in our earlier opinion in 19 *N. J.* 399, 407, 408. Most material to our inquiry here is the advice that:

"1. Fill in your name, address and telephone number in the space provided in each coupon. * * *

2. * * * Fill in what you think would be an appropriate 4th line. Originality, neatness, etc. mean more than ability to write poetry, so everyone has a real *chance* to win. Duplicate prizes will not be awarded, and the opinion of the judges will be final.

3. Take the coupon to the *nearest* Acme store, and deposit it in the Prize Contest Box just inside the door. * * *" (Emphasis supplied)

We will deal now with the element of chance which heretofore was conceded to have existed with respect to the coupon calendar. (19 *N. J.* 399, 412). We are told by the plaintiff that "the jingle contest is based entirely upon skill"; that the winners are not determined by chance but by the controlled discretion of the persons judging the entries according to the standards of appropriateness, "originality, neatness, etc." But is this so?

All entries each week are delivered by American Stores Company to three central points in the state. Addresses, Inc., a company retained by the plaintiff, picks up the "contest" boxes at these three points and brings them to its central office in Camden, where it opens the "contest" boxes and puts the entries from each store into separate envelopes appropriately designated. These envelopes are then turned over to four employees to examine. Who they are or what their qualifications are to judge these entries on the basis of appropriateness, "originality, neatness, etc." is not shown. However, these employees examine the entries store by store for all of the stores in the North Jersey region, *i. e.*, north of Trenton. They examine each entry "to see if it has complied with the rules of the contest and for neatness and originality." The standard of appropriateness, so strenuously suggested on the oral argument to be one of the criteria,

is in fact never applied. The elusive standard of "etc." has likewise disappeared. After such examination these four employees choose six entries from each store "which in their opinion are the best" from the standpoint of "neatness and originality." They then make a general comparison of the "six best" from each store and choose the 26 stores out of the more than 120 stores in the North Jersey region having the "best" entries collectively. These 156 entries are then delivered to Dr. Ralph B. Allen, head of the English Department of "Rutgers University Extension" in Camden.

For the South Jersey region these four employees examine the entries from the more than 100 stores as a group and applying the same standards of "originality and neatness" select the 100 best entries. These entries are also delivered to Dr. Allen.

Dr. Allen maintains the distinction between the two regions and judges both separately. Richard T. Clark, the president of Addresses, Inc., tells us that "Dr. Allen then considers the 250 [256] jingle entries so submitted with the viewpoint of considering the standards of originality and neatness." He says Dr. Allen's "judgment is based upon the original idea expressed and the neatness of the same in the jingle entry." Dr. Allen, on the other hand, tells us that he examines "each entry separately and determine[s] on the basis of originality what in my opinion is the best entry. The phrasing of and the form of the expression influences my determination. Good expressions with original ideas stand out. * * * The winners selected by me are in my opinion the best original expressions submitted." He selects the best entry from each of the 26 stores in the North Jersey region sent to him and then selects the best entry of these 26. The one so selected gets the major prize—a mink stole— and the remaining 25 receive the remaining prizes according to no advertised schedule, definite system of selection or distribution. The same general procedure is followed with the 100 entries from South Jersey, but from these he selects only the 17 better ones and then he selects the best of that lot. Here, too, the winner gets the major prize and the others

fall in behind according to no definite system of selection. By the time Dr. Allen gets the entries the standard has been still further narrowed, by his own admission, to originality.

There is no description of the method by which the grand prizes—the 12 Cadillacs—are to be awarded. There is nothing before us which shows that the much advertised Cadillacs ever reached the hands of the public.

With this arrangement for the selection of the winners it is difficult to see how "the jingle contest is based entirely upon skill." The initial screening is done by employees whose qualifications to judge on the basis of the standards used were not deemed important enough to be set forth. The standards they use are different from the one used by the final judge, Dr. Allen. In fact, the standards used by them are different from the ones made known to the "contestants" by way of the calendar. These employees eliminate some of the entries generally by store classification so that it is entirely possible, and indeed probable, that one of the entries selected as one of the six best in a particular store and eliminated because it did not rate final selection as being in one of the 26 stores having the "best" entries, is in fact the best on the basis of originality and would be so in Dr. Allen's judgment. This determination is a matter of pure chance. Whether a superior entry will definitely come before the final judge depends upon whether it is entered in the North Jersey group or the South Jersey group. The important geographical distinction is not made known to the "contestants" in any way; nor is the difference in the mode of selection in both groups advertised. Moreover, as to the North Jersey group, the chance of getting any particular entry before the final judge depends in large part on the quality of the other jingles in the store in which it is entered, a factor absolutely beyond the control, skillful determination or judgment of the entrant. As Mr. Justice Holmes aptly said in *Dillingham v. McLaughlin*, 264 *U. S.* 370, 373, 44 *S. Ct.* 362, 363, 68 *L. Ed.* 742, 747 (1924):

"What a man does not know and cannot find out is chance as to him, and is recognized as chance by the law."

Furthermore, by using the standard of neatness not used by Dr. Allen, the four employees of Addresses, Inc. might have been eliminating entries which would have been chosen by Dr. Allen as the "best" on the basis of originality. Without the guide of definite and identical standards controlling all the judges, the element of chance plays the leading role in the selection of the winners; for what one judge may exclude by the application of his standards the other judge may choose by the application of his.

That chance is involved is further indicated by the fact that under no circumstances will duplicate prizes be awarded. Thus, in case of a tie between two entries equally neat and equally original, the final decision must be uncontrolled and the selection made by pure chance. It was seriously suggested by the plaintiff on oral argument that there is nothing to indicate that in this eventuality chance selection would be made and that there is nothing to prevent the prize from being awarded to the tied winners jointly. That intent is certainly not evident from the rules of the "Contest," nor do we seriously believe that it would be carried out.

The speciousness of the scheme is apparent. The plaintiff and its customer, American Stores Company, frankly concede that a "contest" in which the winners are chosen on the basis of merit has a great deal less appeal to the participants because of this very fact of competition among the entrants. Indeed, they expressly note that:

"* * * it is an interesting insight into the habits of human beings, namely, that they always prefer to have something for nothing rather than compete against other persons in order to win a valuable reward."

The jingle calendar is clearly a definite effort to take advantage of this insight into one of the weaknesses of human nature to get "something for nothing" by avoiding any clear indication that the entries will be judged on merit, and, by in fact following a procedure of selection which leaves the determination of the winner primarily to chance. From the standpoint of skill, the declaration to the contestants that "everybody has a real chance to win" is false. Only from

the standpoint of the vice sought to be controlled—chance— is the representation a true statement.

■ The vice of the jingle scheme is not that it depends wholly on chance but that its determination depends in part on chance. This is sufficient to taint it, *State v. Ricciardi*, 18 *N. J.* 441 (1955); *State ex inf. McKittrick v. Globe-Democrat Publishing Co.*, 341 *Mo.* 862, 110 *S. W. 2d* 705, 113 *A. L. R.* 1104 (*Sup. Ct.* 1937). In the *Ricciardi* case, *supra*, this court stated that:

"* * * The principle is settled that in determining the presence of gambling in a particular operation or form of activity, the criterion is not whether the element of skill is present to some degree but whether it or chance is the dominant factor in attaining the desired result. See *Hunter v. Mayor and Council of Teaneck Twp.*, 128 *N. J. L.* 164, 168 (*Sup. Ct.* 1942); *Commonwealth v. Bowman*, 267 *Ky.* 602, 102 *S. W. 2d* 382 (1936); *People ex rel. Ellison v. Lavin*, 179 *N. Y.* 164, 71 *N. E.* 753, 66 *L. R. A.* 601 (1904); *Commonwealth v. Plissner*, 295 *Mass.* 457, 4 *N. E. 2d* 241 (1936)." (18 *N. J.*, at *page* 445)

But here chance permeates the entire scheme.

■ There can be no criticism of prize contests when they are truly contests of ability, and the best or superior entrants have a reasonable opportunity to be the winner. Prize contests, where the selection is based on adequate standards, made known to the contestants and sought to be complied with by them and used to select the winner by judges whose qualifications have reasonable relation to the purpose to be achieved, are not illegal, *Brooklyn Daily Eagle v. Voorhies*, 181 *F.* 579 (*C. C. E. D. N. Y.* 1910). The ingredient of chance, so condemned in *State v. Shorts*, 32 *N. J. L.* 398 (*Sup. Ct.* 1868), where Chief Justice Beasley said at *page* 401: "This ingredient of chance is, obviously, the evil principle against which all prohibitory laws are aimed," and by this court in our recent decision in this case, is absent where there is an honest attempt to judge all entrants by reasonable criteria. The subjective involvement of the judge, unavoidable as it is in a great many of the cases where the standards to be applied require personal judgment, does not vitiate the choice as one of chance selection, provided he

has qualifications which reasonably indicate that the result reached by him generally would be concurred in by persons learned or experienced in the particular field involved. As an appropriate example we refer to a contest in our own profession, the Ross Prize Essay contest, conducted annually since 1934 by the American Bar Association under the terms of the will of the late Judge Erskine M. Ross. The judges chosen are traditionally a practicing lawyer, a judge and a law teacher, and they do not select the winner by chance, 41 *A. B. A. J.* 823 (September 1955); see also *Blyth v. Hulton & Co., Ltd.* (*Ct. App.* 1908), 24 *T. L. R.* 719, 72 *J. P.* 401, 52 *S. J.* 599, *Minges v. City of Birmingham*, 251 *Ala.* 65, 36 *So. 2d* 93 (*Sup. Ct.* 1948), and the illuminating discussion in *Contests and the Lottery Laws*, 45 *Harv. L. Rev.* 1196, 1210–1217.

In *Blyth v. Hulton & Co., Ltd., supra*, the English Court of Appeal had before it a very similar jingle contest. The defendants, who were proprietors of a weekly journal, announced that they would give a first prize of £300 for the best last line in a limerick competition, a second prize of £100 and two more prizes of £50 each and in addition they would send a sovereign to each of the next 100 entries by way of consolation prizes. The express indication was that every coupon entry sent would be very carefully examined by a competent staff, and would be judged entirely on its merits and that the editor's decision would be final. The limerick there to be completed was:

> "He wished her a happy New Year
> and endeavored to make it quite clear
> that her happiness lay
> in naming the day
> . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The winning line was:

> "When the ring and the book should appear."

When the winner was announced, the plaintiff, who had sent in a line identical to the one chosen as the winner, but who had not been declared the winner, brought action to recover

the amount of the prize. The court there held that in all the circumstances of the case the contest was a lottery, it being obvious that the selection of the winner, by reason of the greater than 60,000 entries, and the screening out process used to eliminate all but a select few, had to be made by chance and not merit. It particularly condemned the 100 consolation prizes as clearly contemplating distribution by chance. The elements of chance in the Lucky Calendar "contest" are far greater than those condemned in the English case.

In the "Pepsi-Cola" case, *Minges v. City of Birmingham*, 251 *Ala.* 65, 36 *So.* 2d 93 (*Sup. Ct.* 1948), heavily relied upon by the plaintiff, the court found that there were definite known standards set up for judging the winners; that these standards were known not only to the participants but to the judges as well—factors absent in the case at bar—and that these were sufficient to remove the contest there from the "odium of lotteries, gift enterprises, or schemes in the nature of lotteries." Though it reached a different conclusion, the court in that case expressed the same view we adhere to in judging this case when it said:

"The standards set up for judging the monthly contest statements or compositions, as to why Pepsi-Cola hits the spot, are aptness, originality and interest. This can mean but one thing; the most apt, the most original and the most interesting, statement shall be adjudged the winner. The selections are to be made by the application of definitely known standards promulgated and announced for that purpose. That to prepare such a statement or composition requires the exercise of the judgment, skill, discretion and effort of the contestant, cannot be denied. And if the contests are honestly carried on and the best composition selected according to these known standards, the selections made are not the result of chance." (36 *So.* 2d 93, at *page* 97)

Accordingly, we reaffirm our view heretofore taken. The judgment below is accordingly reversed and this decision as well as our decision in 19 *N. J.* 399 will be deemed to embrace both types of Lucky Calendars.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice OLIPHANT—1.