## LAMKIN, et al v. ATTORNEY GENERAL, et al.
### No. 151074-C.
Circuit Court, Hillsborough County.
January 27, 1966.

James M. McEwen and Joseph E. Melendi of Gibbons, Tucker, McEwen, Smith & Cofer, Tampa, Joseph C. Jacobs of Ervin, Pennington, Varn & Jacobs, Tallahassee, and O. Douglas Wolfe of Gurney, Gurney & Handley, Orlando, for plaintiffs.

Edward D. Cowart, Miami, Reeves Bowen, Tallahassee, and William F. Garcia, Tampa, for the defendant Attorney General.

Paul Antinori, Jr., State Attorney, and Nick J. Falsone, Assistant State Attorney, for the defendant State Attorney.

JOHN G. HODGES, Circuit Judge.

*Final decree:* This cause came on to be heard on the plaintiffs' petition for a declaratory decree under chapter 87, Florida Statutes, requesting an interpretation of chapter 616 of the statutes and a determination of their rights under such statute, with an additional prayer for injunctive relief.

The state attorney general and the state attorney for the thirteenth judicial circuit were the named defendants. The individual plaintiffs, all of whom desire to operate games and concessions at public fairs throughout the state, brought this action for themselves and others occupying similar or related positions.

The defendants challenge the entitlement of the plaintiffs for relief under the Declaratory Judgment Act. Defendants further assert that the games which the individual plaintiffs seek to operate are, in fact, violative of the gambling statutes of the state of Florida.

The court, having taken testimony, heard argument of counsel and being otherwise informed, makes the following —

## Findings of fact

The individuals who are plaintiffs in this case and others have for many years operated games at public fairs and expositions throughout the state. Twenty-three types of such games are enumerated in §616.091, Florida Statutes, which also sets out certain "standards" for the operation of such games. Each of the types of games delineated in this statute, which were described by the witnesses, can be played in a variety of ways. Generally, except for the "guess your weight and guess your age" game, the player pays a monetary consideration for the opportunity to play the game. In the event the player achieves the required result, he is awarded a "capital prize", which is a prize of greater value than one which he would receive for merely participating in the game and not achieving the required result. In the "guess your weight or guess your age" game, the participant pays a monetary consideration to the operator of the game and receives a "capital prize" in the event the operator fails to guess the participant's age or weight within so many years or pounds of his actual age or weight. In the event

the operator does guess the weight or age, the participant is given a lesser prize.

The exact method of playing each game is left up to the operator. For example, in the milk bottle game, one ball or three balls can be used, or the game can require the player to knock the bottles off a stand or merely knock them over. In addition, the degree of difficulty in achieving the required result in each game can be and has been controlled or regulated by the operator, even while complying with the limitations or "standards" set in §616.091. For example, again in the milk bottle game, the shape of the bottle, its position on the stand, and the size and composition of the ball used to knock the bottles over or off the stand influences the degree of difficulty in achieving the result.

In those games in which some feat is required of the participant in order for him to obtain a prize, the accomplishment of such a feat can be and has been controlled or regulated by the operator to such an extent as to render such accomplishment either impossible or a fortuitous occurrence entirely unrelated to the proficiency or judgment of the player.

The difficulty with which the operators of these games are faced arises by virtue of the fact that the state attorney herein, in accordance with an interpretation of the applicable statutes by the attorney general (Op. Atty. Gen. 065-139), has stated that he would prosecute any person, firm or organization operating or attempting to operate any of the types of games decribed in §616.091, notwithstanding the fact that such games are named in said statute and that the plaintiffs propose to operate these games in accordance with the "standards" set out in §616.091.

For many years both before and after the enactment of §616.091 these games have been played in the state with the consent and knowledge of law enforcement officials, notwithstanding the provisions of the gambling laws of the state (e.g., §§849.01, 849.09 and 849.14), and notwithstanding the provisions of chapter 616, which recognize the prohibitions of those gambling laws (§§616.09 and 616.091(1)). The reasoning of an opinion of the attorney general in the year 1955 (Op. Atty. Gen. 055-60), which declared a shooting gallery to be gambling, has not been applied to these games by such officials. This apparently was done for the purpose of assisting fairs and expositions.

The method of playing these games is not varied for women or children and they may be played by all in attendance at the fair.

All parties have conceded the constitutionality of the statutory provisions involved. The court notes that the title to the bill in which §616.091 was first enacted contained a defect which would

have been fatal had not the act been incorporated in the 1965 revision of the Florida Statutes. (See Spangler v. Florida State Turnpike Authority, 106 So.2d 421).

*Conclusions of law*

1. The court has decided, after careful consideration of the question of jurisdiction, that it does have jurisdiction to hear the case in accordance with the provisions of the Declaratory Judgment Act. This court is of the firm opinion that these individual plaintiffs should not be subjected to arrest and prosecution in order to determine their rights in this factual situation. This conclusion is reinforced by the fact that the plaintiffs and others have heretofore operated these games in the state without serious interference by law enforcement officials who apparently were interested in promoting the fairs. Now the plaintiffs are faced with possible arrest for doing what they have been doing all along, except for the year 1965. This gives rise to a reasonable doubt on their part as to their rights, status, duties, responsibilities and possible liabilities, which doubt this court has jurisdiction to resolve. It is the purpose and intent of the Declaratory Judgment Act that it be liberally construed (Bell v. Associated Independents, Inc., 143 So.2d 904), and there is present in this case an ascertainable set of facts and a bona fide question or controversy. Under these circumstances, the plaintiffs have the clear and unmistakable right to invoke the provisions of the Act.

2. It is the determination of this court that when a player pays a monetary consideration to play a game requiring the skillful performance of some feat in the hope that he will play it so skillfully as to win a prize of value which he will receive from the operator of the game only if he achieves the required result, such a game constitutes gambling as defined in §849.14 of the statutes. This court is of the opinion that §849.14 applies to such so-called "games of skill" whether the parties betting be the actors in the event upon which their wager is laid or not (McBride v. State, 39 Fla. 442, 22 So. 711). The games which are in question in this case are all proposed to be operated in this manner and as such are gambling in violation of the laws of the state of Florida.

A distinction is drawn in this connection between a "purse, prize, or premium" and a "stake, bet, or wager." In the former, the person offering the prize has no chance of gaining back the thing offered, whereas in the latter each participant has a chance of gain and risks a loss. In the former, something of value is offered for the winner of a contest, but for which the offeror does not compete and no part of which he stands to recover. In the latter, each participant risks loss or gain. (15 Fla. Jur. 103, Gambling, §11).

3. Neither §616.091, nor any other provision of chapter 616, repeals by express terms or by implication nor is it repugnant to or inconsistent with the provisions of chapter 849 of the statutes. To the contrary, the validity and applicability of the provisions of chapter 849 to the operation of amusement devices and games in public fairs and expositions has been specifically recognized in chapter 616 by §616.09, which provides that — "nothing in this chapter shall be held or construed to authorize or permit any association . . . to conduct, supervise, permit, or suffer any gambling or game of chance, lottery, betting or other act in violation of the criminal laws of the state . . ." and §616.091(1), which provides — "Since Florida law forbids lotteries, gambling, raffles, and other games of chance at . . . fairs . . ." This shows that notwithstanding the listing of several types of games and amusement devices in §616.091, the legislature intended to retain the prohibitions of chapter 849 against gambling. This conclusion is buttressed by the provisions of §§849.26 and 849.27, which provide that any gambling transaction to be excluded from the provisions of those sections must be one which is *expressly* authorized by law."

4. Even assuming that §616.091 was intended by the legislature to remove certain games involving the skill of the player from the condemnation of §849.14, the games in controversy here would still come within the purview of the gambling laws. (Moreover, the games involved here are shown to be subject to control or regulation by the operator to such a degree that they are capable of being operated and have been operated in such a manner as to make the skill of the player an insignificant factor and the winning of the game depend predominantly on chance to the members of the general public who attend the fair and play these games). Whether chance or skill is the determining factor in these games must depend upon the capacity of the general public — and not experts or proficient operators themselves — to achieve the required result. (State v. Globe Democrat Pub. Co., 110 S.W.2d 705; see also Dillingham v. McLaughlin 264 U.S. 370, 44 S. Ct. 362). Based upon this test, some of the games involved are not games of skill. For these reasons, it is the conclusion of this court that the games in question (other than the age and weight games) when so operated, are lotteries and as such violative of the constitution of the state of Florida.

5. In short, the enactment of §616.091 had no legal effect upon the criminal statutes of Florida. It could not authorize lotteries as they are prohibited in the constitution, and it did not authorize gambling at Florida fairs but expressly recognized and reiterated legislative prohibitions against any criminal violations in connection with amusement games conducted there.

112

6. Nothing in this decree should be construed nor is any part of this decree intended to restrict or limit these plaintiffs or any other persons from conducting or playing games in a manner which is not inconsistent with the laws of the state of Florida.

In consideration of the foregoing, it is decreed that all of the games contemplated by the plaintiffs to be played at the Florida State Fair, whereby the patron is permitted for a sum of money to play a game of skill or chance and an opportunity to win a valuable prize, are within the condemnation of chapter 849, Florida Statutes, and are, therefore, illegal.

It is further decreed that any and all of the games enumerated in §616.091, Florida Statutes, if conducted in a manner not in conflict with the criminal laws of the state of Florida, may be conducted under said §616.091 in compliance with the standards therein set forth.

It is further decreed that the injunctive relief prayed for in this case be, and the same is, denied.