HOBSON, Judge.
This appeal is from a declaratory decree of the Circuit Court of Hillsborough County adjudging certain games which are described in § 616.091, Fla.Stat., F.S.A., in which the appellants desire to operate at the Tampa State Fair as gambling and therefore violative of the laws of the State of Florida.
After a careful reading of the pertinent statutes involved, a study of the briefs and record on appeal discussing the matter under consideration and a careful analysis of the lower court’s final decree, we conclude that the lower court incorrectly ruled that the games specified in Chapter 616 or more specifically those games set out in § 616.091 (m) through (jj) inclusive, even though operated in accordance with the standards set forth in said statutes, constituted gambling and therefore were illegal.
There are two pertinent statutes which govern the adjudication of this dispute. The first is Chapter 616 relating to public fairs and expositions. The second is Chapter 849 relating to gambling.
“616.091 OPERATION OF SHOWS.—
(1) TRADE STANDARDS FOR OPERATION OF SHOWS. — Trade standards for the operation of shows and amusement devices in connection with public fairs and expositions are as follows : * * * ”
Thereafter the statute sets forth some twenty-three games by name or description and sets forth standards by which they must be played.
Section 849.14, Fla.Stat., F.S.A., states as follows:
“849.14 UNLAWFUL TO BET ON RESULT OF TRIAL OR CONTEST OF SKILL, ETC. — Whoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, * * * or whoever re *749 ceives in any manner whatsoever any money or other thing of value staked, bet or wagered, or offered for the purpose of being staked, bet or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depositary of any money or other thing of value so staked, bet, or wagered upon any such result, * * * shall be guilty of gambling, * *
A portion of the chancellor’s final decree in his “Findings of Fact” reads as follows:
“The exact method of playing each game is left up to the operator. For example, in the milk bottle game, one ball or three balls can be used, or the game can require the player to knock the bottles off a stand or merely knock them over. In addition, the degree of difficulty in achieving the required result in each game can be and has been controlled or regulated by the operator, even while complying with the limitations or 'standards’ set in Section 616.091, Florida Statutes. For example, again in the milk bottle game, the shape of the bottle, its position on the stand, and the size and composition of the ball used to knock the bottles over or off the stand influences the degree of difficulty in achieving the result.
“In those games in which some feat is required of the participant in order for him to obtain a prize, the accomplishment of such a feat can be and has been controlled or regulated by the operator to such an extent as to render such accomplishment either impossible or a fortuitous occurrence entirely unrelated to the proficiency or judgment of the player.” (emphasis supplied)
Thus it appears that the chancellor has concluded that in each of the games enumerated in § 616.091 the element of “skill” is so remote, or otherwise, the element of “chance” is so overriding, that any person who participates is ipso facto gambling.
In the fourth “Conclusion of Law,” the chancellor finds as follows:
“4. Even assuming that Section 616.091, Florida Statutes, was intended by the Legislature to remove certain games involving the skill of the player from the condemnation of Section 849.14, Florida Statutes, the games in controversy here would still come within the purview of the gambling laws. (Moreover, the games involved here are shown to be subject to control or regulation by the operator to such a degree that they are capable of being operated and have been operated in such a manner as to make the skill of the player an insignificant factor and the winning of the game depend predominantly on chance to the members of the general public who attend the fair and play these games.) Whether chance or skill is the determining factor in these games must depend upon the capacity of the general public — and not experts or proficient operators themselves — to achieve the required result. (State [ex inf. McKittrick] v. Globe Democrat Pub. Co., [341 Mo. 862] 110 S.W.2d 70S [113 A.L.R. 1104]; see also Dillingham et al v. McLaughlin et al, 264 U.S. 370, 44 Sup.Ct.Rep. 362 [68 L.Ed. 742].) Based upon this test, some of the games involved are not games of skill. For these reasons, it is the conclusion of this Court that the games in question (other than the age and weight games) when so operated, are lotteries and as such violative of the Constitution of the State of Florida.”
In the sixth “Conclusion of Law” the chancellor finds as follows:
“6. Nothing in this decree should be construed nor is any part of this decree intended to restrict or limit these plaintiffs or any other persons from conducting or playing games in a manner which is not inconsistent with the laws of the State of Florida.”
We find the final decree both inconsistent and illogical in consideration of the above *750 enumerated “Findings of Fact” and “Conclusions of Law”.
The chancellor decreed as follows:
“DECREED that all of the games contemplated by the plaintiffs to be played at the Florida State Fair, whereby the patron is permitted for a sum of money to play a game of skill or chance and an opportunity to win a valuable prize, are within the condemnation of Chapter 849, Florida Statutes, and are, therefore, illegal.' It is further
“DECREED that any and all of the games enumerated in Section 616.091, Florida Statutes, if conducted in a manner not in conflict with the criminal laws of the State of Florida, may be conducted under said Section 616.091, Florida Statutes, (in compliance with the standards therein set forth. It is further
“DECREED that the injunctive relief prayed for in this case be, and the same is, hereby denied.”
To us, the chancellor has said in the first paragraph of the decretal portion of the decree that the games set out in § 616.091 are gambling and therefore illegal. However, in the second paragraph he decrees that the same games are not gambling if conducted in such a manner not in conflict with the criminal laws of Florida. We think the Legislature has stated clearly the manner in which these games may be conducted and not be in violation of the criminal laws of the State of Florida.
Section 616.091 was passed by the 1963 Legislature. The enactment of this specific legislation setting forth certain designated games with definite standards of conduct clearly evidences a legislative intent to approve the games and amusement devices therein named so long as they meet the specific requirements of the statute. It would require an absolute ignoring of the legislative intent if we presumed that the Legislature intended to prohibit those games and amusements on which they have placed definite standards and requirements.
This rationale has even greater weight when Chapter 616 is read in its entirety. Section 616.09 provides that “[njothing in this chapter shall be held or construed to authorize or permit any association organized hereunder to carry on, conduct, supervise, permit or suffer any gambling or game of chance, lottery, betting or other act in violation of the criminal laws of the state * * *.” It would be illogical to hold such games to constitute gambling when the Legislature set forth certain games and devices for the specific purpose of being played at public fairs and expositions and then in the same chapter to make it clear that this act did not authorize or permit gambling, games of chance, lotteries, etc.
Even assuming the games enumerated in Chapter 616 constitute gambling, the Legislature has the authority to exclude from the gambling laws such games because gambling is not prohibited by the Florida Constitution.
Therefore, we conclude that Chapter 616.091 specifically sets forth a legislative intent to authorize certain games and devices which would not be in degradation of the gambling laws as set forth in Chapter 849, Fla.Stat., F.S.A., when such games are conducted in accordance with the standards set forth in said statute. See Fair-cloth v. Central Florida Fair, Inc., Fla.App., 202 So.2d 608.
Reversed and remanded with instructions to enter a declaratory decree in accordance herewith.
ALLEN, Acting C. J., concurs.
WILLIS, ROBERT E., Associate Judge, dissents with opinion.