STILLMAKER ET AL., D. B. A. STILLMAKER DISTRIBUTION CO.,
APPELLEES, *v.* DEPARTMENT OF LIQUOR CONTROL ET AL.,
APPELLANTS.

(No. 8346—Decided January 16, 1968.)

*Messrs. Topper & Alloway, Mr. James F. DeLeone, Messrs. Lindhorst & Dreidame, Messrs. Tyler, Kane & Rubin* and *Mr. John L. Watson,* for appellees.

*Mr. William B. Saxbe,* attorney general, and *Mr. James E. Rattan,* for appellants.

DUFFEY, P. J. This is an appeal from a judgment of the Common Pleas Court of Franklin County entering a declaratory judgment and granting injunctive relief to the plaintiffs-appellees.

Upon examination of the record, it appears that the action was submitted on stipulations and as an agreed case. There was no factual determination to be made by the Common Pleas Court. Accordingly, the judgment is not appealable on questions of law and fact. *LeMaistre, Admr.,* v. *Clark* (1943), 142 Ohio St. 1; *State, ex rel. Schneider,* v. *Smith* (1949), 55 Ohio Law Abs. 479. See Skeel's Ohio Appellate Law, Section 214. The appeal will be reduced, *sua sponte,* to one on questions of law only. Pursuant to Rule V (D), appellants may have 30 days to file the transcript as a bill of exceptions and may refile the briefs instanter.

The petition alleges that plaintiffs-appellees are in the business of selling, leasing and operating coin-operated machines. Two of these machines are called "Fun-Way" and "Fun-Spot," and appellees have a number of such machines located on the premises of various liquor permit holders. Defendant-appellant Donald D. Cook is the Director of the Department of Liquor Control. He has stated his intention to "confiscate" and seize any such machines found by his agents on any permit holder's premises, and to bring charges against the permit holder for permitting such machines on his permit premises. Appellees requested a declaration that the machines are not gambling devices and are lawful devices not subject to confiscation or seizure. The petition also requests injunctive relief against any such seizure and from prosecuting or in any manner interfering with the business of any permit holder because of the possession or display of the machines. The Common Pleas Court held that the machines are not gambling de-

vices per se and their possession is not a violation of law, including Regulations of the Department of Liquor Control.

The machines are of the so-called "pin-ball" type. Upon insertion of a coin, the operator obtains five metal balls which he can shoot by using a plunger. The machine contains a series of holes and an arrangement of baffles and bumpers. If the player's balls land in certain sequences in the holes, he obtains a score which is electronically recorded by the machine. Regardless of his score, the operator does not and cannot obtain any coins or tokens, nor does he receive any free games, i. e., the right to shoot any additional balls without inserting another coin. Upon initial deposit of a coin, he receives five balls to shoot, and he must insert another coin before he can again shoot five balls.

The machines are designed so that the operator may, at the outset, obtain greater odds of scoring and greater scores by inserting additional coins. The additional deposits, made without shooting, do not increase the number of balls or shoots available. They double, triple, quadruple or quintuple the odds of scoring. This is reflected electronically by the use of six lighted display arrangements resembling "bingo" cards, one of which is activated by each coin deposit. Thus, the operator may play one game for a dime, receiving five balls, and activating one set of number sequences. For each additional dime, he activates another set of number sequences up to a maximum of sixty cents. It should be emphasized here that the purchase of additional sets of number sequences merely increases the scoring possibilities and affects only the total score obtainable.

There is a carry-over feature between games. While no coins, tokens, free games or additional metal balls can be obtained regardless of the operator's score, the machine does carry over a set of number sequences for every 100 "points" on the operator's score. Thus, for one dime, an operator shoots five balls and obtains a score of 500 points. He must deposit another dime in order to obtain five more balls. If he does, the machine automatically, and

regardless of his desires, will increase the odds by activating five sets of number sequences or "bingo cards." If the operator has scored 700, upon again playing he would commence with five sets and a score carry-over of 200 points.

The applicable statutes are Sections 2915.16, 2915.17 and 2915.18, Revised Code, and Regulation 53 of the Liquor Control Commission.

Section 2915.16, Revised Code, as pertinent, defines a gambling device as follows:

"(B) Any machine or mechanical device, * * * designed and manufactured to operate by means of insertion of a coin, token, or similar object so that when operated it may deliver as the result of the application of an element of chance, any money, property, or other thing of value;"

In our opinion, the devices here are not gambling devices because the operator does not receive any "money, property, or other thing of value."

The Attorney General argues that the machine provides a prize in the form of the carry-over. There can be no doubt that the carry-over feature facilitates gambling. Of course, with or without the carry-over feature, it is possible to gamble on the outcome of operating the machine. However, it is argued that the carry-over provides a unit or base of "amusement," and that that is a thing of value.

Section 1.03, Revised Code, defines "anything of value," and is to be interpreted by applying the rule of *ejusdem generis*. See *State* v. *Clark* (1938), 60 Ohio App. 367. That statute would appear to exclude mere amusement.

Regardless of the statute, we think counsel is confusing amusement which can be purchased as such with amusement which results from operating a device or playing a game. If the result of the game could be purchased directly without playing it, then awarding that result for playing might be a prize or thing of value. In the present case, the result cannot be purchased. The result of either initial investment or carry-over is only the probability of a higher score in the following game, but each game must be purchased.

Accordingly, the holding and reasoning in *Westerhaus Co., Inc.,* v. *Cincinnati* (1956), 165 Ohio St. 327, is not controlling in this case.

The distinction that must be drawn is the difference between a gambling device and a device which may facilitate gambling. To be a "gambling device" the machine itself must involve a price, a chance and a prize. Thus, the roulette wheel, the wheel of fortune and other such devices certainly facilitate gambling, but they are not "gambling devices" within Section 2915.16, Revised Code.

Appellants also rely upon Section II of Regulation 53 of the Department of Liquor Control. That regulation provides:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder any device, machine, apparatus, book, records, forms, tickets, papers or charts which may or can be used for gaming or wagering or the recording of wagers, pools or chances on the result of any contest, or allow or conduct gaming or wagering on such premises on (of) any game of skill or chance."

The wording of this regulation presents considerable difficulty if read too literally. In our opinion, the phrase "may * * * be used for gaming" refers to anything actually used in gambling. The phrase "can be used for gaming" refers to anything which is in itself a "gambling device."

The machines here are not gambling devices in themselves, are therefore not contraband as such, and are not seizable or subject to confiscation as such. If used in gambling on permit premises, they may be seized as evidence in a citation case. Compare *Solomon* v. *Liquor Control Comm.* (1965), 4 Ohio St. 2d 31.

If the director and the commission feel that the presence of such machines, or similar items such as pool tables, bowling devices, etc., should be banned on permit premises, they have broad authority to adopt a regulation on the matter. This is exactly what the city of Columbus did. See *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103. In that case the Supreme Court held:

"7. Where an amusement device is so designed that

it may readily be put to an unlawful use in gambling, a municipality may, in the exercise of its police power, prohibit the exhibition of such machine and need not postpone such action until such machine is unlawfully used. (*Myers* v. *City of Cincinnati*, 128 Ohio St., 235, followed.)''

"9. A municipality may by ordinance make it a misdemeanor to possess within the municipality any pin game, the operation, use or play of which is controlled by placing therein any coin, although operation of such machine will not give a player any prize even by way of free plays or anything in return for his payment other than amusement in playing such game.''

We have examined the provisions of the injunction issued by the Common Pleas Court. The wording appears capable of an interpretation which would improperly inhibit the Department of Liquor Control in its enforcement duties.

As presently worded, it applies to any coin-operated device owned or exhibited by the plaintiffs-appellees. The court had before it only the two types of machines, "Fun-Spot" and "Fun-Way." Since the particular operation of a machine may vary greatly, no conclusion can be reached on such devices in general. The injunction will be modified to limit its order to the type of machines involved in this case.

The last clause of the entry excepting such machines when operated to produce a "pay-off" is too narrow. It will be modified to except any machine which is used in gaming or wagering. In so doing, we express no opinion on the authority of the department to confiscate and destroy property used in gambling upon permit premises, as opposed to seizing and holding such property as evidence of a violation of the statutes or regulations.

The injunction will be modified as stated, and, as so modified, will be affirmed.

*Judgment modified and, as modified, affirmed.*

DUFFY and HERBERT, JJ., concur.