GREAT ATLANTIC & PACIFIC TEA Co., INC., *v.* COOK, DIR.
KROGER Co. *v.* COOK, DIR.

[Cite as Great Atlantic & Pacific Tea Co. v. Cook, Dir., 15 Ohio Misc. 181.]

(Nos. 231542 and 232566—Decided April 23, 1968.)

Common Pleas Court of Franklin County.

*Messrs. George, Greek, King, McMahon & McConnaughey, Mr. Darold I. Greek* and *Mr. Kiehner Johnson,* for the Great Atlantic & Pacific Tea Company.
*Messrs. Porter, Stanley, Treffinger & Platt, Mr. Lawrence D. Stanley* and *Mr. James J. Hughes, Jr.,* for The Kroger Company.
*Mr. William B. Saxbe,* attorney general, and *Mr. James E. Rattan,* for Director of Liquor Control.

STERN, J. These two cases are being considered and decided together as the basic issue in both cases is the same.
Before this court are these specific matters for consideration in both cases:

(1) A request for a declaratory judgment on the construction of Regulation LCc-1-53-II of the Ohio Liquor Control Commission that A & P's game known as "Bonus Bingo," Pepsi Cola's distribution of bottle caps with imprinted playing card symbols through A & P stores, and Kroger's game known as "Races to Riches."

(2) Mandatorily enjoin the defendant to process pending applications to transfer Class C-1 and C-2 permits from one location to another and to process applications for new permits of the same type.

In considering the issues of this case we will decide each case on the merits as there is no dispute between the parties as to the facts in each case. In the A & P case, the defendant has filed a motion for summary judgment, the plaintiff has filed a motion for judgment on the pleadings. In the Kroger case plaintiff and defendant have agreed to submit the case by way of stipulation. The A & P case is being considered on the motion for summary judgment; the motion for judgment on the pleadings in the A & P case is overruled; the Kroger case is presented on a stipulation of facts. However, we will decide both cases on the merits of the respective cases.

Before discussing the basic issue in these cases, and that is a construction of Regulation LCc-1-53-II, we are ruling upon the question of the director refusing to process applications to transfer permits or process applications for new permits for retail stores including the A & P retail store formerly located at 209 South Third Street, Columbus, Ohio. Upon the request of the director, the Ohio Liquor Control Commission has issued citations to suspend or revoke the respective permits for alleged violations of the regulation in question in one store of each plaintiff.

The Department of Liquor Control has the authority to grant or refuse permits for the manufacture, distribution, transportation and sale of beer and intoxicating liquor (Section 4301.10(A) and (2), Revised Code). The permits that are issued by the Department of Liquor Control authorize the person named therein to carry on the business only at the location designated in the permit.

Section 4303.27, Revised Code. *State ex rel. Socotch,* v. *Bryant, Director,* 158 Ohio St. 249. Therefore, even though the same permit holder may hold many permits in different locations throughout a community in the state, each permit is a separate and distinct authorization to perform and carry on the privileges allowed by the permit in each location without any relationship of one permit to the other. The director's authority in the area of processing applications is limited to either granting or refusing to act upon such requests. In *State, ex rel.,* v. *Bryant,* 156 Ohio St. 396, the director is required to file all applications for regular permits regardless of the qualifications of the applicants and other pertinent matters pertaining to the issuance of appropriate permits. An application for the issuance or renewal of a liquor permit must be acted upon by the director. *Socotch* v. *Krebs,* 97 Ohio App. 8. The Supreme Court of Ohio has clearly announced the duty of administrative officials to *act timely* upon an application and either mandamus or a mandatory injunction is the proper remedy to compel his *decision. State, ex rel.* v. *Singer,* 9 Ohio St. 2d 95, 97.

There is no statutory authority for the director to fail to act upon an application to transfer a permit from location to location if there is a pending citation against the applicant who requests such action. From an administrative point of view there may be sound logic in refusing to transfer a permit from one owner to another if there is a citation pending against the permitholder, or if there are other sound reasons which justify the director to refuse to transfer such application, but still he must specifically approve or disapprove such transfer. There is no statutory authority for the director to refuse to act upon an application by the same owner from one location to another. Section 4301.25, Revised Code, provides that permits may be suspended or revoked for transferring a permit contrary to the Liquor Control Commission rules. *Gartavo* v. *Appley,* 27 Ohio Law Abs. 155.

The Liquor Control Commission rules do not grant any authority to the director to refuse to *act* upon an application to transfer a permit.

With regard to the applications to transfer permits and applications for new permits, a mandatory injunction is to issue directing the director to *act* upon all applications filed by both plaintiffs to transfer permits or for new permits.

The problem pertaining to the three activities referred to in both petitions as to their status as being in or not being in violation of Regulation LCc-1-53-II. The specific question before us is whether or not the ''game'' or ''activity'' carried on in each instance comes within the purview of a prize, chance and consideration, and if these three elements are present, is it applicable to LCc-1-53-II Regulation?

The courts are in general agreement that a prize is some advantage or inequality in amount or value, accruing to some, but not all, of the participants in the game or contest. No lottery exists if every contestant receives something of value of precisely the same nature. Trading stamp schemes fall into the category of everyone paying the same consideration and receiving the same value in premiums. Ordinarily, no element of chance exists if there is equality of distribution. Chance is a condition precedent to the existence of a prize. Inequality of distribution is therefore the very basis of the prize requirement. From a description of the three games defined and explained in the two petitions there is a prize involved.

Is there not chance involved? The element of chance is supplied by having the happening of some future event to determine who gets the prize or how much he gets. If the winner's success is due primarily to his own skill or ability, the contest is not a lottery—if, on the other hand, the winner's success is due to something beyond his control then ''chance'' appears and becomes a part of the game or contest.

Even where judgment must be exercised by the participants, but they are without sufficient information to form a judgment, then chance appears as an element in a lottery. In other words the distinction between schemes dependent on chance and those dependent on skill is one of

degree. Without chance the inducement to participate in the awards offered by the merchant is lessened. The element of chance is apparent in each of the three games or activities involved in these cases.

We now come to the most perplexing aspect of determining the basic issue in this case and that is the question of "consideration."

An individual who is not trying to defraud his creditors has a right to give away his property as he sees fit. The determination whether the gift is by chance or method employed is immaterial so long as the donor alone can lose by the transaction. The question of legality or illegality becomes an issue when other people are induced to surrender consideration in the hope of obtaining something of value in return. The element of consideration is therefore of important legal significance.

The participants are not always required to pay something of value solely for the expectation of winning a prize. The problem of consideration becomes more difficult to decide when the goods and the chances are sold together for a price that seemingly is the cost of the merchandise alone. If the goods are generally accepted as fairly competitive price, then the profits are derived from the sale of the merchandise rather than the opportunity afforded an individual to obtain "something for nothing." It is when participants are induced to give up consideration in the hope of obtaining greater returns that the law becomes concerned. The element of consideration is therefore of vital legal significance. It is not necessary for the participants to pay their consideration solely for the chance of winning a prize. The problem became more complex when the goods and the chance were sold together for the market value of the merchandise alone. If the goods are worth what was paid for them, the profits apparently are being derived from the lawful sale of merchandise, rather than the unlawful sale of chances.

From most of the cases considered, it does not matter how carefully it is sought to separate the single transaction into a sale of merchandise and a gift of "chance" if

clearly some of the price paid for the chance of winning is a prize. From general commercial practice it is apparent that everyone buying the goods contributes to the carrying on of the "give away" program to receive a prize. The seller of necessity must spread the cost of the prize over what may be or is hoped to be an increased number of customers.

Appellants rely heavily upon *Stillmaker* v. *Department of Liquor Control*, 13 Ohio App. 2d 29. An analysis of that case indicates that this is not germane to the issues presented herein. In *Stillmaker* the Court of Appeals stated that (1) the machines involved are not gambling devices in themselves and (2) the phrase "can be used for gaming" refers to anything which is in itself a "gambling device" even though the Court of Appeals raised some serious question as to the use of the words "may * * * be used in gaming." The court declared that the regulation in question refers to anything actually used in gambling. In the citations issued in both cases herein the director's language specifically states that the permitholder had in its possession a race card which may or can be used for a chance on the result of a contest. The language in the pending citations is a direct and clear allegation that the director claims that the three games are contests in violation of the regulation. If upon hearing the citation the Liquor Control Commission finds from the evidence presented to it on the citations that each contest is a violation of the regulation, then the terms "may be used" or "can be used" for gaming are not indefinite and vague terms as the Court of Appeals referred to in *Stillmaker* but have a clear and definable meaning. If on the other hand the Liquor Control Commission finds from the evidence that the contests are not in violation of the regulation then obviously there can be no charge of illegal activity in carrying on the contests.

Probably the most discussed case on this subject on a national basis is *F. C. C.* v. *American Broadcasting Co.*, 347 U. S. 284. In analyzing the court's opinion, it is important to read the three-judge trial court's decision in this

particular case. Mr. Chief Justice Warren's opinion and the majority opinion of the lower court that the court held that the only effort required to participate in hoping to win a prize was to listen or watch the program. The court, in effect, said there was a prize, a chance but no consideration. In *State* v. *Devroux,* 14 O. O. 283 Judge Copland of the Cleveland Municipal Court distinguished his conclusion from Judge Eyrich's decision in *State* v. *Bader,* 24 N. P. (N. S.) 186. The difference in opinion taken by both trial court judges is indicative of the difficulty in determining the issues on this subject. All the cases cited appear to turn on the "trier of the facts" interpretation of what constitutes "consideration" or any other element constituting a lottery.

The ruling in *Goodwill Advertising* v. *State Liquor Authority,* 244 N. Y. Supp. 2d 322 is not helpful in the case at bar for the reason that this court is bound by the very broad language used by the Supreme Court in the *Westerhaus case.* The Ohio rule under *Westerhaus* is that a gamble on the happening of an event is contrary to law in this state.

The judicial law of Ohio on this subject was stated in *Westerhaus* v. *Cincinnati,* 165 Ohio St. 327, 338, 339. There the court explicitly spelled out that an element of chance can be supplied by having the happening of some future event. This, of course, embodies the three necessary elements to constitute a lottery, namely chance, prize and consideration.

The claim is made that the liquor permits held by plaintiffs are for "off-premises" consumption of the beverage, and that the "evils" which may occur in a retail establishment where alcoholic beverages are consumed, where gambling of any type or nature is permitted or allowed is a matter for the court to consider. It is not within the province of this court to determine the morals of the issue involved. This is a legislative function and not a judicial interpretation and decision. The Legislature has defined that operators of certain businesses under certain prescribed rules may sell alcoholic beverages for "off" and "on" premises consumption. The Legislature has

granted to the director and the Liquor Control Commission authority to adopt rules and regulations pertaining to the sale, etc. of alcoholic beverages. Neither the Legislature nor the rules adopted by the Liquor Control Commission make any distinction between the class of permitholders as to the sale, etc. of alcoholic beverages except as to the specific privileges granted under each type of permit. Questions as to the enforcement of provisions pertaining to the sale, etc. of alcoholic beverages apply equally to all holders of the various types of permits issued by the state for the privilege to sell alcoholic beverages.

The question of whether or not one has to be a purchaser of merchandise from the retailer is not germane to the issue. The claim that one does not have to buy merchandise from the retailer, but is permitted to enter the store or write in for a ticket to participate in the game or contest is the very intent that the retailer seeks to procure and that is either a customer who buys and participates in the game or a prospective customer, who, without purchasing, enters the store to procure a game card and then participates in the game does the very thing that the retailer sets out to accomplish, and that is using a lottery-type scheme to promote business. The increased business which the operator receives through employment of the plan supplies adequate consideration. *Stevens* v. *Cincinnati Times Star Company,* 72 Ohio St. 112, 152; *Troy Amusement Co.* v. *Attenweiler,* 64 Ohio App. 105, and *Westerhaus* v. *Cincinnati, supra.*

I fully recognize that the "evils" from gambling which the Supreme Court of the United States expressed and condemned in *Horner* v. *United States,* 147 U. S. 449 and *F. T. C.* v. *Keppel & Bro.,* 291 U. S. 304 and numerous Ohio Supreme Court and Appellate Court cases may or may not be apparent in the case at bar. We have to consider these cases, not on a "moral" issue as to the degree of harm that the game may or may not do to the participant but more specifically on the question of what the law (both statute and judicial interpretation) actually is in this state.

The law of Ohio is that whenever a participant is re-

qnired to make a purchase of an item to participate in a game or contest, or whenever some benefit regardless of how minute the benefit may be by the operator though no payment or purchase has to be made by the participant, this becomes a lottery under the statutes of Ohio and Regulation LCc-1-53-II of the Ohio Liquor Control Commission.

It is, therefore, the finding and order of this court that:

(1) A mandatory injunction issue to the director to grant or refuse to issue all pending applications to transfer permits and new permits in accordance with law.

(2) That the three games or contests referred to in the petition as "Bonus Bingo," Pepsi Cola bottle cap and "Race to Riches" are declared to be in violation of Article XV, Section 6 of Ohio Constitution, Sections 2915.01, *et seq.*, of the Revised Code, and Regulation LCc-1-53-II promulgated by the Ohio Liquor Control Commission.

The motion for summary judgment in the A & P case is sustained.

In the Kroger case the finding is for the defendant. However, in each case, the finding and order is subject to the mandatory injunction to issue, requiring the director to process all pending applications filed with his department by each plaintiff.